**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BARBARA ANN CLARK,

      Plaintiff,

v.

                                  Case No. 1:24-cv-00845-MIS-JMR

EQUITY TRUST COMPANY,
EQUITY INSTITUTIONAL IRA,
JOHN AND JANE DOES I – X,
OXFORD GOLD GROUP, INC.,
PATRICK GRANFAR, and
PED GRANFAR,

      Defendants.

## ORDER GRANTING EQUITY TRUST COMPANY'S MOTION TO COMPEL ARBITRATION

THIS MATTER is before the Court on Defendant Equity Trust Company's Motion to Compel Arbitration, filed September 11, 2024.  ECF No. 5.  Plaintiff has not filed a response, and the deadline to do so has passed.  See ECF No. 7.  For the reasons that follow, the Court will **GRANT** the Motion.

According to the Complaint, in January 2023, Plaintiff spoke with Defendant Oxford Gold Group, Inc. ("Oxford") about investing in precious metals.  Compl. (ECF No. 1-1) ¶ 10.  Oxford directed her to open an individual retirement account ("IRA") with Defendant Equity Trust Company ("Equity"), which was one of Oxford's "preferred partners" for metals transactions.  Id. Plaintiff signed a contract for Equity's IRA services, id. ¶ 14, and simultaneously purchased precious metals (gold and silver) from Oxford, id. ¶ 16; the transaction was funded from Plaintiff's Equity IRA in the amount of $200,000.  Id.  However, Oxford never fulfilled the trade.  Id. ¶¶ 21, 26.

On August 16, 2024, Plaintiff filed in New Mexico state court a Verified Complaint for Fraudulent Business Practices, Breach of Contract, Conversion, Violation of the Unfair Trade Practices Act, Breach of Fiduciary Duty, Unjust Enrichment, and for Specific Performance and Punitive Damages against Oxford, Equity, and others.  ECF No. 1-1 at 2.  On August 26, 2024, Equity removed the case to the United States District Court for the District of New Mexico.  ECF No. 1.

On September 11, 2024, Equity filed the instant Motion to Compel Arbitration.  ECF No. 5.  Equity attached to the Motion, <u>inter alia</u>, the Declaration of Heather Smith, Senior Manager of Investments for Equity, ECF No. 5-1 at 1-2, who states that to open an IRA with Equity, customers must complete an application and agree to be bound by the Equity Trust IRA Custodial Account Agreement ("CAA"), <u>id.</u> ¶ 5.  Ms. Smith attached a copy of Plaintiffs IRA Application to her Declaration.  <u>Id.</u> ¶ 6; ECF No. 5-1 at 15-19.  Section 7 of the Application—which is titled: "IMPORTANT (Please Read Before Signing)"—states, in relevant part:

> The signature below acknowledges that I have received, read, and understand the Equity Trust Company IRA Custodial Agreement, Disclosure Statement and Fee Schedule found in the **IRA Custodial Account Agreement and Disclosure Statement**.  I acknowledge that the **IRA Custodial Account Agreement and Disclosure Statement** explains the duties, limitations on duties, and the rights of Equity Trust Company and depositor.  By signing this application below, the depositor . . . agrees to all of the terms and provisions set forth in the **IRA Custodial Account Agreement and Disclosure Statement**[.]
>
> **Signatures—By signing below, I hereby make the following representations:** . . .
>
> **15. I further specifically acknowledge that I have read and understand the Arbitration Agreement in Article 18 of my IRA Custodial Account Agreement and that, unless I opt out of the arbitration agreement within 65 days of opening my Account, I agree that I will be bound by that Arbitration Agreement.**

ECF No. 5-1 at 18.  Plaintiff signed the Application on March 15, 2023.  <u>Id.</u>

2

Ms. Smith also provided a copy of CAA, which contains the arbitration clause.  ECF No.

5-1 at 12.  The arbitration clause provides, in relevant part:

> **Scope.** You and [Equity] agree that MANDATORY BINDING ARBITRATION
> will be the exclusive means of resolving any claim between you and [Equity] or
> any of its officers, directors, or affiliates (including Equity Administrative Services,
> Inc.), including any existing or future claim arising out of or relating in any way to
> (i) this Agreement, (ii) any prior Agreement between you and [Equity], (iii) your
> IRA Account, or (iv) any services provided by [Equity].
>
> All claims are subject to arbitration, no matter what law or legal theory they are
> based on or what remedy they seek. The arbitrator has exclusive authority to resolve
> any questions regarding the application, enforceability, unconscionability, or
> interpretation of this Agreement and this arbitration provision. The arbitrator has
> exclusive authority to resolve any disputes regarding the timeliness of any demand
> for arbitration. Any questions about whether claims are subject to arbitration shall
> be resolved by interpreting this arbitration provision in the broadest way the law
> will allow it to be enforced.
>
> BOTH YOU AND [EQUITY] GIVE UP THE RIGHTS TO GO TO COURT AND
> TO A TRIAL BY JURY TO RESOLVE CLAIMS COVERED BY THIS
> ARBITRATION AGREEMENT. YOU FURTHER AGREE TO GIVE UP YOUR
> RIGHT TO PURSUE OR PARTICIPATE IN ANY PENDING OR FUTURE
> CLASS ACTION OR OTHER CLASS OR REPRESENTATIVE PROCEEDING
> AGAINST CUSTODIAN OR ITS OFFICERS, DIRECTORS, OR AFFILIATES,
> INCLUDING THE JACOBS V. EQUITY TRUST CO. LITIGATION
> CURRENTLY PENDING IN THE COURT OF COMMON PLEAS IN LORAIN
> COUNTY, OHIO, AS CASE NUMBER 13-CV-182283. IF YOU DO NOT
> TIMELY OPT OUT OF THIS ARBITRATION AGREEMENT, YOU WILL NOT
> BE ABLE TO PARTICIPATE IN OR BE A MEMBER OF ANY CLASS ACTION,
> INCLUDING THE JACOBS LITIGATION.

CAA, Art. XVIII, ECF No. 5-1 at 12.[1]  Customers may opt out of the arbitration agreement within

sixty-five days of opening their IRA.  Id.  However, Plaintiff did not opt out of the arbitration

agreement.  Decl. of Heather Smith, ECF No. 5-1 at 1-2 ¶ 9.

---

[1]       The CAA contains a "Small-Claims Exception" to the arbitration agreement that states that "[t]he
only exception to the exclusivity of arbitration is that you and [Equity] retain the right to bring individual claims in a
small-claims court of competent jurisdiction . . . , but only if your claims are within the jurisdiction of small-claims
court."  CAA, Art. XVIII, ECF No. 5-1 at 12

Pursuant to the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract…to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. "To implement § 2's substantive rule, a party may apply to a federal court for a stay of the trial of an action upon any issue referable to arbitration under an agreement in writing for such arbitration pursuant to § 3 of the FAA[.]" Belnap v. Iasis Healthcare, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (internal quotation marks omitted)).

"A court addressing a motion to compel arbitration . . . must first determine whether there exists an enforceable agreement to arbitrate." Brayman v. KeyPoint Gov't Sols., Inc., 83 F.4th 823, 832 (10th Cir. 2023). "It is then necessary to determine such matters as 'who is bound by' the agreement, and whether the 'agreement covers a particular controversy[.]'" Id. (first quoting Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009), then quoting Rent-A-Center, 561 U.S. at 69). However, "when parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'" Belnap, 844 F.3d at 1280 (quoting Rent-A-Center, 561 U.S. at 68-69).

Here, the Court finds that an enforceable agreement to arbitrate exists between Plaintiff and Equity Trust Company. See ECF No. 5 at 3; CAA, Art. XVIII, ECF No. 5-1 at 12; Decl. of Heather Smith, ECF No. 5-1 at 1-2 ¶¶ 5-6, 9; IRA Application § 7, ¶ 15, ECF No. 5-1 at 18. The Court further finds that the arbitration agreement—which states that "[t]he arbitrator has exclusive authority to resolve any questions regarding the application, enforceability, unconscionability, or interpretation of this Agreement and this arbitration provision[,]" CAA, Art. XVIII, ECF No. 5-1

at 12—delegates to the arbitrator all threshold questions concerning arbitrability.  Brayman, 83 F.4th at 833 (finding that a materially indistinguishable provision delegated arbitrability to the arbitrator).  Consequently, the Court must compel arbitration.  Belnap, 844 F.3d at 1292-93 (holding that where there is a valid agreement to arbitrate that delegates arbitrability issues to an arbitrator, a district court must grant a motion to compel arbitration).

Accordingly, it is **HEREBY ORDERED** that:

1. Equity Trust Company's Motion to Compel Arbitration, ECF No. 5, is **GRANTED**;

2. Plaintiff must submit the claims asserted against Equity Trust Company to arbitration;

3. This action is **STAYED** as to Defendant Equity Trust Company only; and

4. The Parties shall file an appropriate notice or motion in this Court within fourteen days of the final resolution of Plaintiff's claims against Equity in arbitration.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE